**E-Filed 5/10/2007**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CAROLYN SIMS; CAROLYN SIMS as Guardian ad Litem for minor DAIJA GARTH,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>SCOTT CORTESE, et al.,<br><br>　　　　　　　　Defendants. | Case Number C 06-6836 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND<br><br>[re: docket no. 13] |

### I. BACKGROUND

On November 2, 2006, plaintiffs David Sims and Carolyn Sims ("Sims") filed the initial complaint in this action. On February 2, 2006, after Defendants filed a motion to dismiss, Sims filed a first amended complaint ("FAC") on her own behalf and as Guardian ad litem for minor Daija Garth ("D.G.") (collectively, "Plaintiffs"). The FAC names as defendants the city of Sunnyvale ("the City"); two public safety officers for the City: Scott Cortese ("Cortese") and Officer Curiel ("Curiel"); and an unknown number of additional unnamed public safety officers for the City (collectively, with Cortese and Curiel, "the Officers"). It asserts ten claims: (1)

---

[1] This disposition is not designated for publication and may not be cited.

deprivation of constitutional rights under color of law, against the Officers, 42 U.S.C. § 1983; (2) a pattern and practice of violation of constitutional rights, against the City, 42 U.S.C. § 1983; (3) racially motivated misuse of government power, against the Officers, 42 U.S.C. § 1981; (4) false imprisonment of D.G., against the Officers; (5) battery of D.G., against the Officers; (6) intentional infliction of emotional distress, against the Officers; (7) negligence, against all defendants; (8) negligent infliction of emotional distress, against all defendants; (9) racial discrimination in violation of Cal. Civ. Code § 51.7, against the Officers; and (10) violation of civil rights by use of wrongful force and false arrest and imprisonment in violation of Cal. Civ. Code § 52.1, against the Officers.

Plaintiffs allege the following in the FAC: Sims is an African-American woman. FAC ¶ 2. Her son Antoine Garth ("Garth") is an African-American man. *Id.* D.G. is the eight year-old daughter of Garth and granddaughter of Sims. FAC ¶ 3. Sims has been appointed as D.G.'s legal guardian by the Santa Clara Superior Court. FAC ¶ 10. D.G. and Garth lived with Sims at Sims' residence for a period of over three years. *Id.* Heather Dale ("Dale"), a Caucasian woman, is D.G.'s mother. FAC ¶ 11. Dale is "a drug addict with serious mental issues." FAC ¶ 15.

At 6.00 p.m. on March 27, 2006, Dale contacted the Sunnyvale police department and requested a civil stand-by. FAC ¶ 11. Dale showed Cortese the copy of an order ("the Order") that was copied in such a way as to render it almost illegible. FAC ¶ 12. She told him that the Santa Clara County Family Court had awarded her temporary custody of D.G. *Id.* Despite the fact that the child custody section was stamped clearly with the words "DENIED PENDING HEARING," which part was understood by the Officers, the Officers proceeded to Sims' home. *Id.* While en route, Cortese asked for confirmation of the Order and was told that it had been signed with changes, which confirmed that temporary child custody had been denied. FAC ¶ 13. The Officers did no further investigation. *Id.*

The Officers and Dale arrived at Sims' home a little after 8.15p.m. FAC ¶ 14. When Garth opened the door, he was immediately recognized by the Officers as being African-American. *Id.* Cortese informed Garth that an order had been issued that granted custody of D.G. to Dale. *Id.* Garth protested, but the Officers insisted. *Id.* Sims also protested via phone,

but was told by the Officers that they were removing D.G. and that Sims would have to deal with the courts. *Id.* The Officers knew that D.G. had lived with Sims for a long period of time and that they were potentially removing her from her home permanently. *Id.* The Officers were motivated in part by the fact that Dale is white and Plaintiffs and Garth are African-American. *Id.*

Because the Officers did not provide Sims with a copy of the Order, she had to go to the Santa Clara Family Court to review it. FAC ¶ 17. The Order clearly indicated that Dale's request for custody had been denied pending a hearing. *Id.* On March 29, 2006, Sims notified the Officers of their error. *Id.* Rather than doing anything directly to retrieve D.G. from her mother's custody, the Officers called Dale and told her to return the child. FAC ¶ 18. Four hours later, after multiple phone calls, Dale brought D.G. back to the Sunnyvale Police Department, using public transportation from San Jose. *Id.*

On March 16, 2007, the City, Cortese, and Curiel moved to dismiss the FAC. Plaintiffs oppose the motion. The Court heard oral argument on May 4, 2007.

## II.  LEGAL STANDARD

For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996). On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *North Star International v. Arizona Corporation Commission*, 720 F.2d 578, 581 (9th Cir. 1983); *MGIC Indemnity Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395 (C.D. Cal. 1995). However, under the "incorporation by reference" doctrine, the Court also may consider documents that are referenced extensively in the complaint and that are accepted by all parties as authentic, but are not physically attached to the complaint. *In re Silicon Graphics, Inc. Securities Litigation*, 183 F.3d 970 (9th Cir. 1999).

## III. DISCUSSION

1. <u>The Order</u>

Because it is referenced extensively in the FAC and because Plaintiffs do not object to the authenticity of the copy provided by the defendants, the Court concludes that it may take judicial notice of the Order.[2] The Order consists of a one-page "Order to Show Cause," a two-page "Application for Order and Supporting Declaration," and eight pages of attachments. The first page of the Order includes an order that Garth appear on April 28, 2006 to show cause why Dale's request for custody of D.G. should not be granted. Section 3 states a further order that a series of documents be served with the order to show cause. Next to the checked box numbered "(5) Other," is hand-written "Ex parte declaration temporary orders custody and [illegible]." Two crossed out lines of text follow, that apparently read "5 days before hear," and "2 days before hearing." The order also includes a stamped order that "[t]he parties are ordered to an emergency screening at 9am the day after the service of these papers. Report directly to the courtroom for referral to Family Court Services." The order is signed. On the attachment entitled "Temporary Orders," the provision that petitioner "will have the temporary physical custody, care, and control of the minor-children of the parties, subject to the other party's rights of visitation" is circled. Underneath, the hand-written text "No visitation prior to hearing" is crossed-out, with what appear to be the initials of the presiding judge. To the side and slightly lower is stamped "DENIED PENDING HEARING." This stamp falls within the circle drawn around the provision, but nothing in the text of the order indicates whether this stamp refers to the visitation prior to hearing or the entire provision.

While it is likely that defendants' interpretation of the Order that led them to remove DG from Sims' custody was erroneous, the Court concludes based on the present state of the record that it was not unreasonable. The words "temporary orders custody" appear on the face of a signed order and it is not clear to what the stamped text "DENIED PENDING HEARING" refers. By calling the court, the Officers also took reasonable steps to verify the Order's

---

[2] The Order is Exhibit A to the request for judicial notice.

4

enforceability.

2.      Allegations Against Defendant Curiel

The FAC contains no factual allegations regarding the actions taken by Curiel during the incidents described in the FAC.  While it names Curiel as a defendant, nothing in the FAC indicates the exact role played by Curiel when Cortese went to the Sims' home or if and how Curiel participated in the removal of D.G. from Sims' custody.

3.      Qualified Immunity

Cortese asserts qualified immunity for his actions.  A determination as to an officer's entitlement to qualified immunity involves a two-pronged inquiry.  First, do the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right?  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).  This first prong mirrors the substantive summary judgment inquiry on the merits of the constitutional claim.  *Sorrels*, 290 F.3d at 969.  Second, if the plaintiff has alleged a deprivation of a constitutional right, was that right clearly established? *Saucier*, 533 U.S. at 201; *Sorrels*, 290 F.3d at 969.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202. This inquiry is wholly objective; the defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant.  *Sorrels*, 290 F.3d at 970.  The plaintiff bears the burden of showing that the right at issue was clearly established under the second prong of the qualified immunity analysis.  *Id.* at 969.

Plaintiffs allege the deprivation of three different constitutional rights:

a. The right to be free from governmental interference with family relationships as protected by the Fourteenth Amendment to the United States Constitution;
b. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and,
c. As to Daija Garth, the right to be free from unreasonable searches and seizures and arrest without probable cause, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

FAC ¶ 24(a)-(c).

      a.      Governmental Interference with Family Relationships

Plaintiffs assert that custodial grandparents have a Fourteenth Amendment liberty interest in the custody of their grandchildren. "[T]here is no authority for the proposition that a grandparent, by virtue of genetic link alone, enjoys a fundamental liberty interest in the adoption of her grandchildren." *Miller v. California*, 355 F.3d 1172, 1176 (9th Cir. 2004) (citations and quotation marks omitted). However, one district court in this circuit has concluded that

> grandparents have no liberty interest in familial integrity or association with their grandchildren by virtue of genetic link alone, but grandparents who have a long-standing custodial relationship with their grandchildren such that together they constitute an existing family unit do possess a liberty interest in familial integrity and association.

*Osborne v. County of Riverside*, 385 F.Supp.2d 1048, 1053-54 (C.D.Cal. 2005).

Even if *Osborne* were binding authority, it would not control the instant case. Unlike *Osborne*, this case derives from a contested parental dispute over custody rights and involves the enforcement of a reasonable interpretation of a facially valid order. As a matter of law, such behavior does not constitute a violation of constitutional rights. *See Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006) ("In refusing to accept [the plaintiff's] interpretation of the order, [the defendant] did not violate [the plaintiff's] substantive due process rights.").

Alternatively, the Court concludes that the asserted constitutional right was not clearly established at the time of the incidents alleged in the FAC. The facts alleged do not support a conclusion that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Cortese was confronted with a family dispute between two parties that each asserted custody rights in D.G.. The Order that he was asked to enforce was ambiguous. He called the Family Court to verify the Order, and it is not alleged that he was told that he should not facilitate the transfer of custody. While Plaintiffs have alleged that Dale abuses drugs and suffers from mental illness, Dale's affidavit indicates that she too alleged that D.G. would be exposed to danger if she remained in Sims' custody. *See* Request for Judicial Notice Ex. 1 at 5. *Osborne* does not provide Cortese with any useful guidance regarding the strength of Sims' interest when compared to an ambiguous order depriving her of that interest. Accordingly, the Court concludes that, under the facts alleged in the FAC, Cortese has qualified immunity with respect to a claim based upon the governmental interference with

family relationships.

      b.      Unreasonable Search, Seizure, and Arrest

Plaintiffs assert that D.G. had a right under the Fourth Amendment not to be taken from the custody of Sims and put into the custody of Dale. They allege that "Daija was . . . delivered by OFFICERS to Ms. Dale," FAC ¶ 15, and that but do not provide other, detailed allegations regarding the alleged seizure. While courts have treated the taking of a child into protective custody as a seizure, *see Doe v. Lebbos*, 348 F.3d 820 (9th Cir. 2003), nothing in the FAC suggests that the seizure was unreasonable within the meaning of the Fourth Amendment. Cortese acted upon his reasonable interpretation of the Order and California Penal Code § 279.6(a)(3), which provides that an officer may take a child into protective custody when "[t]here are conflicting custody orders or conflicting claims to custody and the parties cannot agree which party should take custody of the child." Such actions do not constitute a violation of constitutional rights. *See e.g. Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006). Accordingly, Cortese is entitled to qualified immunity with respect to a claim based upon an asserted violation of the Fourth Amendment.

      c.      Equal Protection of the Laws and Racially Motivated Misuse of Government Power

Plaintiffs allege the following:

> The conduct of OFFICERS was motivated and caused at the very least in part because Ms. Dale was Caucasian and plaintiffs and Antoine Garth are African American.

FAC ¶ 14.

> [Officers violated t]he right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution . . . .

FAC ¶ 24(c)

> The above-described acts of defendants OFFICERS further deprived plaintiff of his rights protected under 42 U.S.C. § 1981, to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by White citizens, and to be subject to like punishment, pains, penalties, and exactions of every kind, and to no other.

FAC ¶ 31.

A plaintiff suing under 42 U.S.C. § 1981 may prevail only by establishing intentional discrimination. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 n.10 (9th Cir. 1985). Plaintiffs do not allege intentional discrimination sufficiently. Instead, they assert that Cortese's actions were "motivated and caused at the very least in part" by race. FAC ¶ 14. Moreover, Plaintiffs have not alleged sufficiently that Cortese misused government power, so the motivation for such action is irrelevant. Finally, Plaintiffs have not alleged that their claim arises from a contract that falls within the scope of 42 U.S.C. § 1981. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 304 (1994); *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) (superseded on other grounds). Plaintiffs' cursory and conclusory allegations with respect to equal protection of the laws are similarly deficient for failure to allege intentional discrimination.

4. <u>*Monell* Claims Against the City</u>

Plaintiffs allege that

> The CITY, by and through its supervisory officials and employees, have been given notice on repeated occasions of a pattern of ongoing constitutional violations and practices by defendant public safety officers herein and other Sunnyvale public safety officers, consisting of the failure to properly verify the validity of orders and warrants and other violations and discrimination against African Americans, all due to improper supervision and training. Despite said notice, defendant CITY has demonstrated deliberate indifference to this pattern and practice of constitutional violations by failing to take necessary, appropriate, or adequate measures to prevent the continued perpetuation of said pattern of conduct by Sunnyvale public safety officers. This lack of an adequate supervisorial response by defendant CITY demonstrates the existence of an informal custom or policy which tolerates and promotes the continued violation of civil rights of citizens by Sunnyvale public safety officers.

FAC ¶ 27. While a claim against the City otherwise might be available under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1997), Plaintiffs' failure to allege a constitutional violation by Cortese requires dismissal of the "policy and practice" claim against the City. *See e.g. City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1992).

5. <u>State Immunities</u>

California Government Code § 820.2 provides:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be

abused.

The California Supreme Court has held "that a public employee's initial decision whether to provide professional services to an individual might involve the exercise of discretion pursuant to section 820.2." *Barner v. Leeds*, 24 Cal.4th 676, 686 (Cal. 2000). This Court concludes that Cortese's alleged actions constitute an "initial decision whether to provide professional services." "However, classification of the act of a public employee as 'discretionary' will not produce immunity under section 820.2 if the injury to another results, not from the employee's exercise of 'discretion vested in him' to undertake the act, but from his negligence in performing it after having made the discretionary decision to do so." *McCorkle v. City of Los Angeles*, 70 Cal.2d 252, 262 (1969). The FAC includes no substantial allegations that Cortese acted improperly after making his initial, discretionary decision. Plaintiffs allege that D.G. was scared as a result of the asserted "assault and battery," *see* FAC 16, but they do not allege that this was caused by Cortese's manner of executing his chosen course of action. Plaintiffs' allegations of negligence are conclusory and lack specific factual allegations that might strip Cortese of immunity. Accordingly, the Court concludes that Cortese is immune from state law causes of actions in light of the facts as currently pled.[3] Consequently, the City also is immune from the state law causes of action. *See* Cal. Gov. Code § 815.2(b) ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.").

6. Leave to Amend and Schedule

Because counsel for Plaintiffs stated at oral argument that further factual detail can be alleged, leave to amend will be granted. Any amended complaint must be filed within ten days after completion of the settlement conference to be held with Magistrate Judge Seeborg. The parties shall appear for a further case management conference on September 21, 2007 at 10.30

---

[3] The Court need not address Cortese's argument that he also is immune from the state law causes of action under Cal. Gov. Code § 821.6, or that Plaintiffs' various claims should be dismissed for failure to state a claim.

1  a.m.

2  **IV. ORDER**

3  Good cause therefor appearing, IT IS HEREBY ORDERED that the motion to dismiss is
4  GRANTED with leave to amend as set forth above.

6  DATED: May 10, 2007

   _____
   JEREMY FOGEL
   United States District Judge

Case No. C 06-6836 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)

This Order has been served upon the following persons:

| | |
|---|---|
| Anthony Boskovich | policemisconduct@compuserve.com |
| Gregory Mellon Fox | gfox@bfesf.com, dsoong@bfesf.com; jtaheny@bfesf.com; ahelfrich@bfesf.com; clee@bfesf.com |
| Arlene Catherine Helfrich | ahelfrich@bfesf.com |

Case No. C 06-6836 JF
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFLC1)